# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

KEVIN FOOTE, ETC., ET AL.,

      **Plaintiffs,**

v.                                 **Case No. 3:24-CV-1206-HES-MCR**

ALL ELITE WRESTLING, LLC, ET AL.,

      **Defendants.**

_____/

## DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THIS ACTION

Defendants, All Elite Wrestling, LLC ("AEW"), Ian Riccaboni, and Tony Khan, through their undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(1), the Federal Arbitration Act, 9 U.S.C. §§ 3, 4,[1] and this Court's Order dated January 3, 2025, as well as for the reasons set forth herein, respectfully move for an Order enforcing the Parties' agreements to arbitrate their disputes and dismissing this action without prejudice pending the resolution thereof. Plaintiffs' independent contractor agreements at issue contain mandatory, binding arbitration agreements that

---

[1] The Federal Arbitration Act and Federal Rule of Civil Procedure 12(b)(1) authorize this Court to dismiss the action because all of Plaintiffs' claims are subject to arbitration. 9 U.S.C. §§ 3, 4; *PTA-FLA, Inc. v. ZTE USA, Inc.*, No. 3:11-cv-510-J-32JRK, 2011 U.S. Dist. LEXIS 122226, at *2 (M.D. Fla. Oct. 21, 2011) ("Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).") (collecting authority).

encompass all of their claims, and this action was filed with blatant disregard for those agreements.[2]

## BACKGROUND

On August 29, 2024, Plaintiffs, Kevin Foote, Brandon Tate, and Brent Tate, initiated this action in the Philadelphia County Court of Common Pleas in Philadelphia, Pennsylvania. On October 4, 2024, Defendants timely removed this action to the United States District Court for the Eastern District of Pennsylvania, invoking federal court jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), and pursuant to 28 U.S.C. § 1331 because of the portions of Plaintiffs' Class Action Complaint implicating federal statutes. (*See generally* Doc. 1).

On October 11, 2024, Defendants filed their Omnibus Motion to Dismiss Plaintiffs' Complaint for Improper Venue or, in the Alternative, Transfer Venue, or Compel Arbitration and Dismiss Plaintiffs' Complaint ("Omnibus Motion") (Doc. 11), and on November 21, 2024, the Eastern District of Pennsylvania granted the Omnibus Motion to the extent that it transferred the case to this Court ("Prior Order") (Doc. 22).

---

[2] Defendants file this Motion in lieu of, and without waiving their right to file a responsive pleading or a dispositive motion under Federal Rule of Civil Procedure 12(b)(6), so as not to waive their right to compel arbitration. *See Cornelius v. JP Morgan Chase Bank, N.A.,* No. 1:16-CV-4394-ELR-JFK, 2017 U.S. Dist. LEXIS 109042, at *5 (N.D. Ga. May 19, 2017) ("Courts may consider pre-answer motions implicating matters of judicial administration and the management of the lawsuit [such as motions to compel arbitration] because early resolution of such motions promotes judicial efficiency and effective use of resources.") (internal citations and quotation marks omitted); *see also Krinsk v. SunTrust Banks, Inc.,* 654 F.3d 1194, 1200–01 (11th Cir. 2011) (holding that a party seeking to compel arbitration waives that right if the party has acted inconsistently with the right to arbitration) .

Now, pursuant to the Court's Order dated January 3, 2025, Defendants move for this Court to enter an order compelling Plaintiffs to arbitrate all of their claims against Defendants and dismissing this action pending the resolution thereof.

## MEMORANDUM OF LAW

This Court should enforce Plaintiffs' agreements with AEW, compel all claims in Plaintiffs' Complaint to arbitration, and dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs expressly and unequivocally agreed to arbitrate all of their claims arising out of or relating to their contracts with AEW. In violation of the arbitration provisions of their agreements with AEW, Plaintiffs commenced the instant action asserting nine causes of action against Defendants, including claims for declaratory judgment, breach of contract, tortious interference with a contract or business relationship, defamation, and false light—all of which relate to or arise out of the parties' agreements.

## I.    STATEMENT OF FACTS[3]

This putative class action arises out of Plaintiffs' agreements with Defendant AEW that were entered into by the parties in June and August of 2023. Plaintiffs, Kevin Foote, Brandon Tate and Brent Tate, were formerly contracted Non-Wrestling Talent (in the case of Foote) or Wrestlers (in the case of the Tates) for AEW. At all times material hereto, Plaintiffs (and all putative class members) were properly

---

[3] The facts set forth in Plaintiffs' Complaint will be assumed true for the purposes of this Motion only. However, Defendants vehemently deny the allegations of the Complaint and reserve the right to challenge each and every allegation (factual or otherwise) contained therein.

classified as independent contractors under their respective Talent or Wrestling Agreements. In addition to AEW, Plaintiffs name AEW's Chief Executive Officer, General Manager, and Head of Creative, Tony Khan, and one of AEW's Non-Wrestling Talent, Ian Riccaboni, as co-Defendants. The facts pertaining to each party are as follows:

### A.    Defendant AEW

Defendant AEW is a professional wrestling promotion company providing wrestling entertainment live and through various media. (Doc. 1-2 at ¶ 7). AEW is also engaged in the promotion and sale of wrestling-related merchandise. *Id.* Founded in 2019, AEW offers an alternative to mainstream wrestling, with a roster of world-class talent that injects new spirit, freshness, and energy into the industry. AEW is built to create moments of a lifetime—memorable, inspiring, and spectacular—by providing its fans with the best wrestling matches and entertainment anywhere. Plaintiffs assert causes of action against AEW for declaratory judgment, breach of the Talent and Wrestling Agreements, defamation, false light, and tortious interference with contract or business relationship. (*See* Doc. 1-2 at Counts I through VI, & VIII).

### B.    Defendant Tony Khan

Defendant Antony ("Tony") Khan is the CEO, General Manager, and Head of Creative of AEW. (*See* Doc. 1-2 at ¶ 10). Plaintiffs Brandon Tate and Brent Tate assert causes of action against Defendant Khan for defamation and false light. (*See id.* at Count IX).

**C.    Defendant Ian Riccaboni**

Defendant Ian Riccaboni is a professional wrestling commentator and broadcaster who most recently contracted with AEW as Non-Wrestling Talent on or about July 1, 2023. *See* **Exhibit A** at 1.  Plaintiff Kevin Foote asserts causes of action against Defendant Riccaboni for defamation, false light, and tortious interference with contract or business relationship.  (*See* Doc. 1-2 at Counts VI & VII).

**D.    Plaintiff Kevin Foote**

Plaintiff Kevin Foote is a professional wrestling commentator who entered into an "All Elite Wrestling Independent Contractor Talent Agreement" ("Talent Agreement") with AEW on June 12, 2023. (*See* Doc. 1-2 at ¶¶ 1, 2, 26). On March 6, 2024, AEW terminated its Agreement with Foote. (*Id.* at ¶ 56). At all times material hereto, Foote's status under the Talent Agreement was that of an independent contractor.

**1.    Plaintiff Foote Agreed to Arbitrate Any Dispute Relating to Any Matter Arising Out of His Talent Agreement.**

On June 12, 2023, Kevin Foote executed a Talent Agreement with AEW. (*See* **Exhibit B** at 21). The Talent Agreement requires that Plaintiff Foote arbitrate:

> any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement (including, without limitation, the application of this Section 16 to any dispute).

(*Id.* at § 16.1).

Specifically, the Talent Agreement provides that any such disputes are to be resolved "for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures." (*Id.*) Plaintiff Foote had the opportunity to review the Talent Agreement, and ultimately, on June 12, 2023, executed the same thereby agreeing to be bound by the Agreement's terms. Because Plaintiff Foote's claims are subject to a valid arbitration provision, the Court should dismiss the Complaint as to Plaintiff Foote's claims and order him to arbitrate his disputes with Defendants.

### E.    Plaintiffs Brandon and Brent Tate

Brandon and Brent Tate, better known as the "Tate Twins," or "The Boys,"[4] are a professional wrestling tag team who entered into separate "All Elite Wrestling Independent Contractor Wrestler Agreement[s]" ("Wrestler Agreements") with AEW on August 23, 2023. (*See* Doc. 1-2 at ¶¶ 3–5, 57, 58). According to the Complaint, on April 1, 2024, AEW terminated its Wrestler Agreements with the Tate Twins due to budget cuts. (*Id.* at ¶ 89). At all times material hereto, each of the Tate Twins' status under the Wrestler Agreements was that of an independent contractor.

---

[4] https://en.wikipedia.org/wiki/Tate_Twins

1.    **Plaintiffs Brandon and Brent Tate Agreed to Arbitrate Any Dispute Relating to Any Matter Arising Out of Their Wrestling Agreements.**

On August 23, 2023, Brandon and Brent Tate executed separate Wrestler Agreements with AEW. (*See* Brandon Tate's Wrestler Agreement, attached as **Exhibit C**, and Brent Tate's Wrestler Agreement, attached as **Exhibit D**). The Wrestler Agreements require that Plaintiffs Brandon and Brent Tate arbitrate:

> any dispute relating to any matter arising under [the] Agreement[s] or any dispute concerning the performance, application or interpretation of any provision of the Agreement[s] (including, without limitation, the application of this Section 16 to any dispute).

(*Id.* § 16.1).

Specifically, the Wrestler Agreements provide that any such disputes are to be resolved "for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc., pursuant to its Comprehensive Arbitration Rules and Procedures. (*Id.*) Plaintiffs Brandon and Brent Tate had the opportunity to review their respective Wrestler Agreements, and ultimately, on August 23, 2023, executed the same, thereby agreeing to be bound by the Agreements' terms. Because the Tate Twins' claims are subject to a valid arbitration provision, the Court should dismiss the Complaint as to their claims and order them to arbitrate their disputes with Defendants.

## II.    PLAINTIFFS' AGREEMENTS TO ARBITRATE MUST BE ENFORCED.

Under well-established precedent, Plaintiffs each entered into a valid and enforceable arbitration agreement for all claims, including "any dispute relating to any

matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement (including, without limitation, the application of this Section 16 to any dispute)." (*See, e.g.*, Exs. B, C, & D at § 16.1). Each of Plaintiffs' claims arises out of the same transaction or occurrence and all claims involve a common nucleus of operative fact such that the interests of justice require them to be tried together. Accordingly, Plaintiffs expressly waived their rights to pursue claims in a judicial forum and this Court should compel arbitration of Plaintiffs' claims and dismiss this action in its entirety.

### A. The FAA Mandates Enforcement of Plaintiffs' Arbitration Agreements.

As the U.S. Supreme Court has stated: "An order to arbitrate [a] particular [dispute] should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960). Under the FAA, arbitration clauses like the one at issue here "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting section 2 of the FAA, "Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration." *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). As affirmed by the United States Supreme Court in *AT&T Mobility, LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011), the FAA declares a liberal policy favoring the enforcement of

arbitration policies, stating: "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In enacting the FAA, Congress sought to overcome widespread judicial hostility to the enforcement of arbitration agreements. *See Hall St. Assoc., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008). The FAA permits private parties to "trade[] the procedures . . . of the courtroom for the simplicity, informality, and expedition of arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31 (1991) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985)). To this end, the FAA not only places arbitration agreements on equal footing with other contracts, but amounts to a "congressional declaration of a liberal federal policy ***favoring*** arbitration agreements." *Perry v. Thomas*, 482 U.S. 483, 489 (1987) (quoting *Moses H. Cone v. Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)) (emphasis added); *Direct TV, Inc. v. Imburgia*, 577 U.S. 47, 136 S. Ct. 463, 468 (2015) ("The Federal Arbitration Act is a law of the United States, and *Concepcion* is an authoritative interpretation of that Act"). Accordingly, where, as here, an enforceable agreement to arbitrate is present, federal and state public policy unequivocally favor arbitration.

**B.    The Parties Entered Into Valid and Binding Arbitration Agreements for Any Disputes Arising Out of the Agreements, Including All Claims Alleged in This Suit.[5]**

To compel a matter into arbitration, a court need only engage in a limited review to determine: (1) whether the parties have entered into a valid agreement to arbitrate their claims; and (2) whether the plaintiff's claims fall within the scope of the agreement to arbitrate. *See Mitsubishi Motors*, 473 U.S. at 626–28; *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008). These inquiries are governed by state contract law but must also be guided by the strong public policies favoring arbitration codified in the FAA. *Volt Information Sciences, Inc. v. Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989). Any doubts as to arbitrability are to be resolved in favor of arbitration. *Moses H. Cone*, 460 U.S. at 24–25.

**1.    The Arbitration Agreements Unequivocally and Indisputably Delegate the Threshold Issue of Arbitrability to the Arbitrator.**

Before addressing the two threshold inquiries outlined above, however, the Court must examine the underlying contracts to determine whether the parties have agreed to commit the threshold question of arbitrability to the arbitrator. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010) ("An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the

---

[5] Pursuant to Section 17.8 of Plaintiffs' Agreements, Florida law applies to substantive issues arising from Plaintiffs' contract-related claims. (*See* Exs. B, C, & D at § 17.8). Moreover, Plaintiffs effectively concede as much because they do not challenge Section 17.8 in any of their claims for declaratory judgment regarding other provisions of their agreements. Therefore, Defendants will apply Florida law for the purposes of the arbitration analysis.

court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other."); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("the issue of the contract's validity is considered by the arbitrator in the first instance"). Accordingly, under *Rent-A-Center*, courts should not address the threshold question of arbitrability where it has been delegated to the arbitrator pursuant to the underlying agreement. *See Mercury Telco Grp., Inc. v. Empresa De Telecommunicaciones De Bogota S.A. E.S.P.*, 670 F. Supp. 2d 1350, 1354 (S.D. Fla. 2009) (quoting *Terminix Intern. Co., LP v. Palmer Ranch Ltd. Partnership*, 432 F.3d 1327, 1332 (11th Cir. 2005) ("[W]hen ... parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator."); *see also Githieya v. Glob. Tel*Link Corp.*, No. 1:15-CV-0986-AT, 2016 U.S. Dist. LEXIS 8573, 2016 WL 304534, at *4 (N.D. Ga. Jan. 25, 2016) (holding that the contract's delegation clause unmistakably allocated questions of enforceability to the arbitrator)

Here, the Court needs to look no further than the plan language of Section 16.1 of the agreements themselves, which provide in pertinent part: "any dispute relating to any matter arising under this Agreement **or any dispute concerning the performance, application or interpretation of any provision of this Agreement (including, without limitation, the application of this Section 16 to any dispute**), shall be resolved for final, binding, and conclusive arbitration." (*See* Exs. B, C, & D at § 16.1) (emphasis added). Therefore, the parties unequivocally and exclusively

delegated the threshold issue of arbitrability to the arbitrator, as evinced by the plain language of the agreements.

However, the arbitration agreements also expressly incorporate the JAMS Comprehensive Arbitration Rules and Mediation Procedures, which also unequivocally and expressly delegate the threshold issue of arbitrability to an arbitrator. (*See* Exs. B, C, & D at § 16.1 ("any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement . . . shall be resolved for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures."))

Rule 11(b) of the JAMS Comprehensive Arbitration Rules states in relevant part that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter." *See* https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11 (last accessed on October 7, 2024). Therefore, based on the express delegation clause in Section 16.1 of the agreements and the incorporation of the JAMS Comprehensive Rules, any question as to the validity of the arbitration agreements, including whether the JAMS Rules apply to this dispute, has been delegated to, and must be decided by, an arbitrator.

Although Plaintiffs claim the arbitration agreement is unconscionable in Count I of the Complaint, they do not challenge and cannot overcome the threshold issue that, pursuant to the JAMS Comprehensive Rules, whether or not Plaintiffs claims are arbitrable is a question for an arbitrator—not the court. Notably, Plaintiffs did not plead a single declaratory judgment count alleging that no agreement to arbitrate had been formed between the parties. Moreover, Plaintiffs effectively concede via omission that there are no formation issues. Accordingly, this Court should dismiss Plaintiffs' claims without prejudice to Plaintiffs' ability to address, in arbitration, the threshold issue of arbitrability.

### 2.  The Agreements to Arbitrate are Valid.

Even if the Court were to proceed to determine the enforceability and interpretation of the arbitration agreements, both of the "gateway" issues have been satisfied here, and thus, Plaintiffs' claims should be compelled to arbitration and this action dismissed.

First, there are valid agreements to arbitrate. General contract law principles apply to the interpretation and enforcement of arbitration agreements. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Courts look to the relevant state contract law when determining whether the parties entered into a valid and enforceable agreement to arbitrate. *Kaplan*, 514 U.S. at 944. Under Florida law, a valid contract exists where offer, acceptance, and consideration are established. *See, e.g., Pope v. Munroe Reg'l Med. Ctr.*, No. 5:04-cv-508-Oc-10GRJ, 2005 U.S. Dist. LEXIS 45871, at * 6 (M.D. Fla. Aug. 1, 2005). An arbitration agreement is enforceable

against a signatory to the agreement where, as here, there was offer, acceptance, and sufficient specification of essential terms. *See Jones v. Sallie Mae, Inc.,* No. 3:13-cv-837-J-99-MMH-MCR, 2013 U.S. Dist. LEXIS 170968, *9–12 (M.D. Fla. Sept. 20, 2013), *report and recommendation adopted,* 2013 U.S. Dist. LEXIS 170969 (M.D. Fla. Dec. 4, 2013).

As explained above, Plaintiffs do not challenge the initial formation of the agreements, nor do they assert in their lawsuit any formation challenges, which is telling here. Moreover, even if they did challenge formation, Plaintiffs are unable to dispute that offer, acceptance, consideration, and essential terms have been established. Plaintiffs and AEW each signed the agreements, the agreements offer monetary compensation in exchange for Plaintiffs' services as Wrestlers or Non-Wrestling Talent, the agreements are sufficiently detailed to include all essential terms of performance, and the dispute resolution provisions plainly detail to Plaintiffs under what circumstances arbitration is to be conducted, where it is to be conducted, and how it is to be conducted. (*See* Exs. B, C, & D at § 16.1). Accordingly, the Court should find that the arbitration agreements are valid and, therefore, enter an Order dismissing this case and compelling Plaintiffs' to arbitrate their claims.

### 3. All of Plaintiffs' Claims are Arbitrable.

As for the second inquiry, the arbitrability of all of Plaintiffs' claims is obvious from the plain language of the arbitration agreements and the factual allegations of Plaintiffs' Complaint, such that each claim falls squarely within the scope of the arbitration agreements. Therefore, dismissal of this action is required. Each of the

Complaint's nine counts arises out of the creation, performance, or termination of Plaintiffs' contracts with AEW. Specifically Counts I through V, VII, and VIII all expressly relate to the subject contracts by their very nature. Further, Counts VI and IX both are so interrelated to the termination of Plaintiffs' contracts and the work that Plaintiffs performed for AEW as Wrestlers or Non-Wrestling Talent that they can be said to, at the very least, "relate to" the contracts with AEW. For example, Plaintiffs Brandon and Brent Tate allege that Defendant Khan made false or defamatory statements about the reasons for terminating their contracts. (*See* Doc. 1-2 at ¶¶ 260–61). Plaintiff Foote alleges that Defendant Riccaboni's allegedly defamatory statements violated AEW's social media policy, and, ultimately, led to a series of events culminating in AEW terminating Foote's contract. (*See* Doc. 1-2 at ¶¶ 222–35). Therefore, all of Plaintiffs' asserted claims "arise out of or relate to" their contracts with AEW.

### 4. The Arbitration Agreements are not Unconscionable.

Plaintiffs responded previously to the Omnibus Motion, and Defendants anticipate that Plaintiffs will likewise respond to this Motion, arguing that the Court cannot compel arbitration because Plaintiffs have asserted in Count I that the arbitration agreements are void because they are unconscionable. (*See* Doc. 1-2 at ¶¶ 122–53). Defendants presume that Plaintiffs filed this declaratory judgment action seeking to render the arbitration agreements invalid as a means of circumventing the arbitration requirements to which they previously agreed, and, more specifically, to

circumvent the fact that all threshold issues of arbitrability should be determined by an arbitrator, and not the Court. Considering that federal law weighs heavy in favor of agreements to arbitrate and arbitration in general, this cannot stand. Accordingly, to the extent necessary, the Court should conclude that Count I of Plaintiffs' Complaint for Declaratory Judgment Finding the Arbitration Clause Invalid fails to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6), or that it fails as a matter of law under Federal Rule of Civil Procedure 56 should the parties be required to submit extrinsic evidence.

Under Florida law, to make an unconscionability finding, Plaintiffs must prove that the arbitration agreements are both procedurally and substantively unconscionable. *See Lambert v. Signature Healthcare, LLC*, No. 19-11900, 2022 U.S. App. LEXIS 18787, at *12–17 (11th Cir. July 8, 2022) (collecting authority and applying Florida law). "The procedural component of unconscionability relates to the manner in which the contract was entered and it involves consideration of such issues as the relative bargaining power of the parties and their ability to know and understand the disputed contract terms." *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 574 (Fla. 1st DCA 1999).

In determining whether a party lacked a meaningful choice, Florida courts look to the totality of the circumstances, considering factors such as:

> (1) the manner in which the contract was entered into; (2) the relative bargaining power of the parties and whether the complaining party had a meaningful choice at the time the contract was entered into; (3) whether the terms were merely presented on a "take-it-or-leave-it" basis; and (4) the

> complaining party's ability and opportunity to understand
> the disputed terms of the contract.

*Hobby Lobby Stores, Inc. v. Cole*, 287 So. 3d 1272, 1275 (Fla. 5th Dist. Ct. App. 2020)

(quoting *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1135 (11th Cir. 2010)).

Although Plaintiffs assert as much in the Complaint, asserted in response to the Omnibus Motion, and will likely assert in response to this Motion, the mere fact that an arbitration agreement is presented on a take-it-or-leave-it basis (*i.e.*, that it is a contract of adhesion) is not dispositive. *Id.* Even when an arbitration agreement is a condition of an independent contractor relationship, "courts should explore the circumstances surrounding the execution of an arbitration agreement before concluding it is procedurally unconscionable." *Hobby Lobby*, 287 So. 3d at 1276. In such circumstances, Florida courts focus on: (1) a plaintiff's ability to understand an arbitration agreement; (2) a defendant's efforts to pressure a plaintiff or discourage a plaintiff from asking questions; and (3) the presentation of the agreement and the size of the print. *See, e.g., id.* at 1276.

For example, in *Hobby Lobby*, the court held that an arbitration agreement was not procedurally unconscionable because the employee made "no allegation that he lacked a full and fair opportunity to inquire into the Agreement's terms or to enlist help if confused" and the "operative terms [were] not hidden, minimized, or buried in fine print." *Id.* Likewise, Plaintiffs make no such allegation here, and they are unable to do so. Although Plaintiffs may now take issue with the forum in which relief is

17

available to them pursuant to the arbitration agreements, they had every opportunity to ask AEW questions or to seek legal advice regarding the arbitration provision.

Indeed, Plaintiffs Brandon and Brent Tate are professional wrestlers and Plaintiff Foote is a professional wrestling commentator. Thus, each of the named Plaintiffs, in addition to those in the putative class, have entered into similar independent contractor agreements with other wrestling organizations, which likely contain similar arbitration agreements, because this is an industry-standard practice. *See* **Exhibit E** at ¶ 10; **Exhibit F** at ¶ 6. Moreover, Plaintiffs make no allegation that essential terms of the agreement were hidden from them or that any intimidation tactics were used, nor can they. The contracts between Plaintiffs and AEW, including the arbitration agreements, were entered into freely and willingly by sophisticated parties with significant knowledge of the applicable industry standards. Plaintiffs had a free choice to either negotiate the agreements, retain counsel to do so, or explore options with one of several other wrestling promotions, yet they elected to sign contracts with AEW. Therefore, the arbitration agreements are not procedurally unconscionable, and the Court may stop its analysis here. *See Lambert*, 2022 U.S. App. LEXIS 18787 at *21.

However, even assuming *arguendo* that the arbitration agreements are procedurally unconscionable, which they are not, there is nothing within the arbitration agreements that renders them substantively unconscionable, either. A contract is substantively unconscionable when it contains terms that are "***unreasonably favorable to the other party***." *Basulto v. Hialeah Auto.*, 141 So.3d 1145, 1157–58 (Fla. 2014)

18

(emphasis in original) (additional emphasis added) (internal citations and quotation marks omitted). While it remains unclear precisely which of Plaintiffs' allegations concern substantive unconscionability, Defendants assume that Plaintiffs primarily take issue with the fact that arbitration precludes them from seeking relief in a judicial forum. However, such an argument would be insufficient because the arbitration agreements do not prevent Plaintiffs from obtaining the relief they are seeking, and to the extent that Plaintiffs are later able to assert that the arbitration proceedings were somehow deficient, they are able to return to a judicial forum to seek recourse. *See, e.g., Scharf v. Bitwarden*, No. 3:23-cv-633, 2024 U.S. Dist. LEXIS 59664, at *28 (M.D. Fla. Feb. 9, 2024) (holding that an arbitration clause in a stock option agreement was not substantively or procedurally unconscionable because it did not entirely preclude the plaintiff from seeking judicial recourse).

Further, gleaning from the Complaint and subsequent filings that Plaintiffs may also take issue with certain perceived one-sided terms in their contracts as a whole, nothing contained within the arbitration agreements rises to the level of being **unreasonably** favorable, as required by *Basulto*. *See Basulto*, 141 So.3d at 1157–58; *see also, e.g.*, *Solis v. Am. Express Nat'l Bank*, No: 5:23-cv-208, 2023 U.S. Dist. LEXIS 118901, at *13–16 (M.D. Fla. July 11, 2023) (holding that the plaintiff failed to meet the burden to show that an arbitration agreement was substantively unconscionable under Florida law where the agreement limited itself to disputes directly relating to the agreement or work performed under the agreement, it did not limit the types of damages available in arbitration, it did not deprive the plaintiff of a means to vindicate

a statutory cause of action, and it provided that either party could compel arbitration). Moreover, it is not enough that the arbitration agreements provide AEW with the discretion to adjudicate disputes or violations of its own rules. (*See* Doc. 1-2 at ¶ 143). To the extent that a disputed AEW rule or policy also constitutes a statutory cause of action, Plaintiffs could seek relief therefor in another appropriate forum, such as arbitration or in court, as necessary. *See Solis*, 2023 U.S. Dist. LEXIS 118901, at *13–16. Accordingly, this Court should find that the arbitration agreements are not procedurally or substantively unconscionable under Florida law, and, to the extent that it does not compel arbitration, should dismiss Count I of Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. *See Lambert*, 2022 U.S. App. LEXIS 18787 at *19–21 (reversing a district court's finding that an arbitration clause was procedurally and substantively unconscionable because the plaintiff had a choice to apply to jobs while drawing from her retirement although she "felt pressured to sign documents" because of her financial situation).

<u>**CONCLUSION**</u>

For all of the foregoing reasons, Defendant respectfully requests that the Court grant this Motion and enter an order dismissing this action and compelling Plaintiffs to pursue their claims in binding arbitration pursuant to the terms of the arbitration agreements.

## LOCAL RULE 3.01(g) CERTIFICATION

The undersigned certifies that counsel for the Parties have conferred, most recently via email on January 7, 2025, and the undersigned represents that Plaintiffs oppose the instant Motion.

DATED:    January 8, 2025

Respectfully submitted,

JACKSON LEWIS P.C.

By: /s/ B. Tyler White
B. Tyler White, FBN: 0038213
Tyler.White@jacksonlewis.com
James D. McGuire, FBN: 1032198
James.McGuire@jacksonlewis.com
501 Riverside Avenue, Suite 902
Jacksonville, FL  32202
Tele: 904-638-2655
Fax:  904-638-2656
*Counsel for Defendants*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 8th day of January 2025, a true and correct copy of the foregoing was electronically filed with the Court by using the CM/ECF system, and was served via electronic mail to the following counsel of record:

Stephen P. New, Esq.
New Taylor and Associates
430 Harper Park Drive
Beckley, WV 25801
steve@newlawoffice.com

*Attorney for Plaintiffs*

/s/ B. Tyler White
Attorney