UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEVIN FOOTE (aka Kevin Kelly),
Individually and on behalf of all others
similarly situated, et al.;

        Plaintiffs,

v.                                   Case No. 3:24-CV-1206-HES-MCR

ALL ELITE WRESTLING, LLC, et al.;

        Defendants.
_____

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION AND DISMISS THIS ACTION**

**COME NOW** Plaintiffs, by and through the undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b)(1) and Local Rule 3.01(b) and submit this *Plaintiffs' Response in Opposition to Defendants' Motion to Compel Arbitration and Dismiss this Action*, stating as follows:

**PRELIMINARY STATEMENT**

Plaintiffs Kevin Foote ("Kevin"), Brandon Tate ("Brandon"), and Brent Tate ("Brent") initiated this putative class action seeking a declaration that they and other putative class members are employees of Defendant All Elite Wrestling, LLC ("AEW") and not independent contractors. Moreover, they seek to have this Court

declare that their rights and the rights of other putative class members may be vindicated in a court by a jury rather than in a procedurally unfair and clandestine arbitration.

Plaintiffs also seek a determination on behalf of themselves and all other similarly situated that the restrictive covenant in each of their agreements is unenforceable. Under these agreements, Plaintiffs are not only restricted from performing services for other entities and earning an income during the time they are providing services to AEW, but also each of the agreements attempts to prevent Plaintiffs from engaging in their professions after the early termination of the agreement by Defendant AEW.

Further, each of these Plaintiffs individually seek damages for the breach of each of their respective agreements with Defendant AEW resulting from the wrongful termination of the agreements by Defendant AEW.

Kevin also seeks damages against Defendant AEW and Defendant Ian Riccaboni ("Riccaboni") for his Pennsylvania state law claims of defamation and false light. Pennsylvania state law claims are also asserted against Defendant Riccaboni and Defendant AEW for tortious interference with business or contractual relationship.

Brandon and Brent assert state law claims against Defendant Tony Khan ("Khan") for defamation and false light.

These individual claims seek to recover for the devastating impact that the actions of each Defendant had and continue to have on the personal, professional, and financial lives of each of the Plaintiffs.

## STATEMENT OF PROCEEDINGS

Plaintiffs initiated this action in the Court of Common Pleas of Philadelphia County, Pennsylvania on August 30, 2024. All Defendants filed a *Notice and Petition for Removal* of the action [ECF 1] with the United States District Court for the Eastern District of Pennsylvania on October 24, 2024 citing the Class Action Fairness Act set forth in 28 U.S.C. § 1332, federal question jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367. On October 11, 2024, Defendants filed *Defendants' Omnibus Motion to Dismiss Plaintiffs' Complaint for Improper Venue or, in the Alternative, Transfer Venue, or Compel Arbitration and Dismiss Plaintiffs' Complaint* [ECF 11]. Plaintiffs filed their *Response in Opposition* on November 1, 2024 [ECF 18]. On November 21, 2024, the United States District Court for the Eastern District of Pennsylvania granted Defendants' *Motion* [ECF 11] to the extent it seeks to transfer venue, transferring the action to this Court. [ECF 22].

On January 8, 2025, Defendants filed *Defendants' Motion to Compel Arbitration and Dismiss this Action* ("*Motion to Compel*") [ECF 33]. Plaintiffs are

submitting this *Response* pursuant to this Court's *Order* [ECF 45] entered on February 6, 2025.

## STATEMENT OF ALLEGED FACTS

Plaintiff Kevin resides in Dillsburg, Pennsylvania and is a professional wrestling commentator. *Complaint* ("*Compl* ) [ECF1-2] at ¶¶ 1-2. Plaintiffs Brandon and Brent are residents of Knoxville, Tennessee and are a professional wrestling tag team. *Compl.* [ECF1-2] at ¶¶ 3-5. Unfortunately, these Plaintiffs entered into agreements with Defendant AEW, a professional wrestling promotion company providing wrestling entertainment and engaging in the promotion and sale of wrestling-related merchandise. *Id.* at ¶ 7. AEW is a Delaware limited liability company with its principal place of business in Florida. *Id.* at ¶ 6. Defendant Riccaboni resides in Allentown, Pennsylvania and is a professional wrestling commentator. *Id.* at ¶¶ 8-9. Defendant Khan is the Chief Executive Officer of AEW and upon information and belief is a resident of Florida. *Id.* at ¶ 10.

Kevin signed a document titled <u>All Elite Wresting Independent Contractor Talent Agreement</u> ("Talent Agreement") and the Tates each signed a document titled <u>All Elite Wrestling Independent Contractor Wrestler Agreement</u> ("Wrestler Agreement"). *Id.* at ¶¶ 26, 57. The Talent Agreement and the Wrestler Agreement are essentially the same, with only insignificant alterations. The two Agreements

will be addressed collectively ("Agreements"), unless otherwise appropriate. While AEW contends that the Plaintiffs were independent contractors, even a cursory review of the agreements leads to the inescapable conclusion that all Plaintiffs were, in fact, misclassified employees of AEW. Plaintiffs seek determination that they and those similarly situated were misclassified as independent contractors when they were, in fact, employees. *Id*. at ¶¶ 154-171. They also seek compensatory damages as a result of the misclassification. *Id*.

Nonetheless, the Wrestling Agreement provided that AEW had the ability to review and approve (or not) the Wrestler's or talent's performance in all manner and regard. *Id.* at ¶ 65. Plaintiffs were required to provide services only to AEW and/or only provide services to other professional wrestling companies with AEW's approval. *Id.* at ¶ 73.

Plaintiffs made allegations with respect to the Arbitration provisions, Section 16.1, in the Agreements that sufficiently establish that the Agreements are unenforceable. The Arbitration provisions do not contain a severability clause, while the Agreements contain a severability clause in Section 17.5. *Id.* at ¶¶ 125-126. AEW admits the Agreements are standardized contracts. *Id.* at ¶ 127; *Motion to Compel* [ECF 33] at p. 18 ("Thus, each of the named Plaintiffs, in addition to those in the putative class, have entered into similar independent contractor agreements with other wrestling organizations, which likely contain similar

arbitration agreements, because this is an industry-standard practice."). By this statement, AEW indicts the entire wrestling industry which for decades has misclassified wrestlerds and wrestling related talent as independent contractors, when in fact they should have been and have been employees. Wrestling companies like Defendant AEW control in every regard the professional lives of wrestlers and related talent yet, laughably, do contend these are "independent contractors."

AEW's speculative statements regarding all the contracts that all of the Named Plaintiffs or putative class members may have signed is not evidence of Plaintiffs' familiarity with arbitration clauses. In fact, Plaintiffs specifically allege that none of the Plaintiffs are familiar with arbitration clauses. *Compl.* [ECF1-2] at ¶ 131.

The Agreements are offered on a "take it or leave it basis." *Id.* at ¶ 128. The Arbitration Agreement was not pointed out to Plaintiffs. *Id.* at ¶ 129. None of the Plaintiffs were afforded the opportunity to negotiate the Arbitration. *Id.* at ¶ 130. AEW now states that the Arbitration provisions were negotiable despite the omission of this statement in its earlier *Motion* wherein they indicated only that Plaintiffs could have asked questions or sought advice regarding the Agreements. See, *Motion to Compel* [ECF 33] at p. 18 and *Motion* [ECF 11] at p. 27. AEW never states that the clauses were negotiable. Plaintiffs specifically allege that they

were not afforded the opportunity to negotiate the Arbitration Agreements. *Compl.* [ECF1-2] at ¶ 130.

The Plaintiffs were not provided with a copy of the Comprehensive Arbitration Rules and Procedures of JAMS, Inc. ("JAMS"), the designated administrator of the Arbitration. *Id.* at ¶ 132. The Arbitration location is to be held in Florida. Plaintiffs are residents of Pennsylvania and Tennessee and the Agreements were not signed in Florida. *Id.* at ¶ 133-134. Brandon and Brent were told not to complain about certain issues so that they could obtain Agreements with AEW. *Id.* at ¶ 135.

The substantial costs of arbitrating a dispute were not explained and Plaintiffs were not advised of the costs of arbitration. *Id.* at ¶¶ 136-137. In fact, the costs of any arbitration are still unknown. Apparently, for three or more parties the filing fee is $3,500 to be paid prior to the commencement of the proceedings.[1] Additionally, a Case Management Fee of 13% is "assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation."[2] Moreover, the "Professional Fees," or hourly rate for the individual arbitrator, can only be determined after arbitration is initiated by calling a case manager.[3]

---

[1] JAMS Arbitration Schedule of Fees and Costs (https://www.jamsadr.com/arbitration-fees) (accessed October 31, 2024).
[2] *Id*.
[3] *Id*.

Plaintiffs were not advised that the discovery process in arbitration is severely limited; they would have to seek permission to file a dispositive motion; and, the proceedings could be terminated or suspended for failure to pay any fees or expenses in full. *Id.* at ¶¶ 138-140. No provision exists for an individual financially unable to proceed with the arbitration. *Id.* at ¶ 141.

Plaintiffs are purportedly prohibited from challenging the validity, legality, or enforceability of this Agreement or any of the terms set forth herein. *Id.* at ¶ 142.

Moreover, the Agreement excludes from Arbitration the application, interpretation, or enforcement of any AEW Rule. *Id.* at ¶ 143. These Rules are attached as Exhibit E to the *Complaint* [ECF 1-2].

Not only do Plaintiffs seek to invalidate the Arbitration provisions, Plaintiffs also seek to invalidate the Restrictive Covenant that attempts to prevent them from working in their professions for the duration of their respective Agreements. *Id.* at ¶¶ 172-181. Specifically, Plaintiffs allege that AEW economically benefits from the goodwill and expertise that Talent and Wrestlers gain prior to their employment by AEW such that any retention of that benefit beyond the time that Talent or Wrestlers perform services for AEW is unwarranted and potentially unfair. *Id.* at ¶ 179.

With respect to Plaintiffs' personal claims, which Defendants deem to be inconsequential (they are not), Plaintiffs seek to recover for damages resulting from the various Defendants' actions that adversely impacted Plaintiffs.

Each of the Plaintiffs seek compensation for AEW's alleged breach of each of the Agreements. *Id.* at ¶¶ 182-203. The damages they seek include, but are not limited to royalties and unreimbursed for travel expenses. *Id.* at ¶¶ 189-190, 200-203. Travel and reimbursement for expenses are addressed in Exhibit G to AEW's Rules. *Id.* at Ex. E. The amount of compensation under each of the Agreements that Plaintiffs seek as damages is not insubstantial. *Id.* at Exs. A and B.

As to Plaintiff Kevin, AEW wrongfully terminated the Talent Agreement on March 6, 2024. *Id.* at ¶ 186. Prior to the termination of the Agreement, Defendant Riccaboni make a false and defamatory statement on Discord™, a social media platform on X™ that Kevin was promoting QAnon movies. *Id.* at ¶¶ 207, 211-213. Defendant Riccaboni published the statements in Pennsylvania with knowledge of or in reckless disregard for their falsity. *Id.* at ¶¶ 218-219.

Kevin made a complaint to AEW regarding Defendant Riccaboni's post claiming a violation of AEW's social media policy. *Id.* at ¶¶ 224-225. Subsequent to the post and the complaint, AEW began to reduce the number of times that Kevin provided announcing services. *Id.* at ¶¶ 226-227, 233-234. Subsequently, Kevin called and left a message for AEW's human resources' department

regarding his mistreatment by AEW. *Id.* at ¶¶ 224-225. After that telephone call, Kevin's contract was terminated. *Id*. at ¶ 235. AEW adopted or ratified the defamatory statements published by Defendant Riccaboni by its actions in failing to enforce their policies. *Id*. at ¶ 236. AEW's ratification or adoption is demonstrated by the adverse decisions made with respect to Plaintiff Foote's performance of services for AEW and the eventual termination of the Agreement. *Id*. at ¶ 237.

Kevin further alleges that the statement by Defendant Riccaboni asserting that he had a relationship with or supported QAnon caused or substantially contributed to AEW taking adverse actions against Kevin by decreasing the number of time he served as a commentator for Events and resulted in AEW ultimately terminating the Agreement. *Id*. at ¶ 244. Riccaboni intended to cause a breach of the relationship between Kevin and AEW or knew that his actions were likely to cause a breach of the relationship. *Id*. at ¶ 245.

Moreover, after the termination of the Agreement, Kevin had a potential business opportunity with New Japan Pro Wrestling for a May 6, 2024 event wherein he would provide English commentary for the "All-Together" wrestling event. *Id*. at ¶ 248. Kevin was not retained to do English commentary and, based upon information and belief, AEW prevented him from being hired. *Id*. at ¶¶ 249-250.

As to the Tates, AEW wrongfully terminated the Wrestling Agreement on April 1, 2024 purportedly due to budget cuts. *Id.* at ¶ 89. Thereafter, Defendant Khan, President of AEW, stated in an interview that Wrestling Agreement was terminated for not showing up for events. *Id.* at ¶ 90. Brandon and Brent allege that his statement is demonstrably unproven and false. *Id.* at ¶ 225. Brandon and Brent have not had a wrestling engagement since the Agreement was terminated, despite numerous attempts to be booked. *Id.* at ¶ 266. At the time this statement was made, Defendant Khan was in Philadelphia, Pennsysylvania and the statement was made during the ROH Supercard of Honor press event. *Id.* at ¶ 91.

As a result of the wrongful actions by the Defendants as alleged in Counts IV though IX of the *Complaint* Plaintiffs allege that they suffered one or more of the following damages: compensation due under the Agreements; royalties; unreimbursed travel expenses; loss of business opportunities; damage to reputation; humiliation; embarrassment; severe emotional distress; lost wages; loss of potential revenue; loss of good will; and, severe emotional distress. (¶¶ 187-188, 189-190, 196-199, 200-203, 239, 246, 252, 267).

In their *Motion to Compel,* Defendants argue that all of the claims including the individual claims of the Plaintiffs are properly subject to arbitration and seek to compel arbitration.

Further, Defendants seek to have this Court make a substantive ruling, under Rule 12(b)(6) or Rule 56, specifically, that Count I, which seeks a declaration finding the arbitration clause invalid should be dismissed under Rule 12(b)(6) or Rule 56. *Motion to Compel* [ECF 33] at p. 16.

Defendants' *Motion to Compel* should be denied in totality as the Agreements are unconscionable and unenforceable.

## ARGUMENT

### I. THE AGREEMENTS ARE UNENFORCEABLE.

"The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418, 142 S.Ct. 1708, 212 L.Ed.2d 753 (2022) (citation omitted). Therefore, Plaintiffs have a right to have their claims analyzed as any other contract devoid of the application of the arbitration aggrandizing cases cited by Defendants.

Plaintiffs contend that the Arbitration Agreements are unconscionable and unenforceable. Thus, Plaintiffs do not have any valid agreements to arbitrate any dispute with any Defendant. Section 2 of the Federal Arbitration Act provides that arbitration agreements are enforceable except "save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

To establish unconscionability, both procedural and substantive unconscionability must exist; however, the determination is made on a sliding scale. *Addit, LLC v. Hengesbach*, 341 So. 3d 362, 366 (Fla. 2d DCA 2022) (citations omitted). Therefore, "'the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citations and internal quotation marks omitted).

The existence of a contract of adhesion, a standardized contract offered on a take it or leave basis, is a significant factor in determining procedural unconscionability. *Id.* at 367. Defendants have admitted that the Arbitration Agreements are contracts of adhesion as they are "industry-wide" practice according to the Defendants. Moreover, Defendants have not indicated that the agreements were subject to negotiation. *Id.* Nor is the arbitration agreement distinguishable from any other clause in the contract. *Id.* These factors are more than sufficient to establish their procedural unconscionability. *Id.*

The *Addir* Court noted that waiver of any attorneys' fees and costs; the provision that forecloses any right to appeal the decision of the arbitrator; and, the provisions limiting discovery rendered those agreements unconscionable. The Court also found unconscionability when one party could proceed in court while another party was precluded from proceeding in court. *Id.* at 368 (denominating

this as an "unlevel-playing field" provision). This provision was found substantively unconscionable. *Id* The unlevel-playing-field provision is contained inter alia in Section 15.1 of the Agreements regarding injunctive and equitable relief.

Moreover, Section 9.2(d) purportedly prohibits Plaintiffs and putative class members from challenging "the validity, legality, or enforceability of this Agreement or any of the terms set forth herein." Thus, AEW seek to deprive Plaintiffs of all remedies with respect to the Agreement. This is the height of an unlevel playing field.

AEW also attempts to completely deprive Plaintiffs of any legal recourse with respect to AEW's Rules in Section 16.1. Kevin relies upon the Rules in Count VI of the *Complaint*. Further, the Rules govern travel expense reimbursement, which is sought by all Plaintiffs.

The Agreements also purport to allow AEW certain types of damages, but deny these same types of damages to Plaintiffs in Section 14.1. More uneven playing field.

All of these one-sided provisions establish substantive unconscionability.

Further, unconscionability is demonstrated by the use of JAMS, Inc. The United States Supreme Court stated that "a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that

party bears the burden of showing the likelihood of incurring such costs." *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92 121 S. Ct. 513, 148 L.Ed.2d 373 (2000). The costs of arbitration are prohibitive and essentially deny Plaintiffs and all those similarly situated a forum in which to seek recovery for their claims.

Initially, for three or more parties the filing fee is $3,500 to be paid prior to the commencement of the proceedings. Additionally, a Case Management Fee of 13% is assessed against all Professional Fees, including time spent for hearings, pre- and post-hearing reading and research and award preparation. Moreover, the "Professional Fees," or hourly rate for the individual arbitrator, can only be determined after arbitration is initiated by calling a case manager.

"The company's [JAMS] neutrals charge among the industry's highest fees."[4] The arbitrators' rates range from about $6,000 to $15,000 a day and the average cost is $10,000 to $11,000 a day.[5] Survey results reported in October 2023 demonstrated that arbitrators charge between $375 and $1,125 per hour, with $600 per hour being the mean.[6] Another report of fees from 2017 for JAMS's arbitrators indicated that fees ranges from $400 per hour to $15,000 or more per day.[7]

---

[4] https://labusinessjournal.com/services/law-legal-attorneys/how-mediation-firm-jams-became-dominant-player/(accessed November 1, 2024).
[5] *Id*.
[6] https://adrtimes.com/how-much-does-arbitration-cost/(accessed November 1, 2024).
[7] https://www.americanbar.org/content/dam/aba/publications/dispute_resolution_magazine/spring2017/3_rothman_trends_in_arbitrator.pdf (accessed November 1, 2024).

While one may read opinions that arbitration is a cost-saving method, these figures demonstrate that is it cost-prohibitive and unconscionable. Plaintiffs, having been wrongfully deprived of their income and been thwarted in seeking other income lack the financial ability to proceed with arbitration. Thus, they will be deprived of any legal recourse. This is precisely why wrestling companies like AEW inject the provision in these contracts.

Finally, AEW contends that the arbitrator must decide the issue of arbitrability. Plaintiffs alleged that the Arbitration **provisions** are unconscionable and unenforceable. *Compl.* [ECF 1-2] at ¶ 124 (**emphasis added**). These provisions would include the delegation clause. The reasons supporting the unconscionability of the entire Agreement also support the unconscionability of the delegation provision. Most importantly, Plaintiffs cannot afford to pay an arbitrator to determine whether paying substantial fees and costs to an arbitrator is unconscionable.

Defendants seek dismissal for failure to state a claim or summary judgment with respect to Count I of the *Complaint* [ECF 1-2] if the Court does not compel arbitration. As set forth in the *Statement of Alleged Facts*, Plaintiffs were presented with a standardized industry contract. *Id*. at ¶ 127. Brandon and Brent were led to believe that they should not voice complaints about certain matters so that they could obtain their contracts. *Id*. at ¶ 135. Plaintiffs are unfamiliar with arbitration

and neither the limited procedural protections nor the costs of arbitration were explained to them. *Id*. at ¶¶ 131-32, 136-141.

Plaintiffs reside in states other than Florida where the arbitration is supposed to occur. *Id*. at ¶ 133. Arbitration is cost-prohibitive. Plaintiffs are precluded from arbitrating disputes regarding the "application, interpretation or enforcement of any AEW Rule." *Id*. at ¶¶ 143-45. The Arbitration provision also permits AEW from seeking injunctive and equitable relief in a court, but denies Talent and Wrestlers the right to seek such relief in a court. *Id*. at ¶ 146.

Thus, the terms of the Agreements are overly unreasonably favorable to AEW. *Id*. at ¶ 151. The costs of arbitration are substantial and preclude Plaintiffs from pursuing resolution of their disputes under the Arbitration Agreement. *Id*. at ¶ 152. The extent of the procedural and substantive unconscionability renders the Arbitration provision as a whole unenforceable and not subject to severance. *Id*. at ¶ 153.

Additional provisions within the Agreements are also unconscionable. Section 15.2 of the Agreements limit the Plaintiffs' compensation for any breach by AEW to the amount of the annual compensation, regardless of the actual damages suffered by the individual. *Id*. at ¶ 148. Section 14.1 of the Agreements permits AEW to recover under certain Sections of Agreements "consequential, incidental, exemplary, punitive, special or indirect damages arising from or related

to this agreement, whether or not foreseeable;" however, the Agreements prohibit Plaintiffs from recovering these types of damages. *Id*. at ¶ 149.

Plaintiffs sufficiently allege procedural and substantive unconscionability and dismissal under Rule 12 is not warranted. Moreover, Plaintiffs respectfully request leave to amend the *Complaint* if this Court finds that the delegation clause is not properly challenged and to assert unconscionability of the entire Agreements based upon additional provisions outside the Arbitration Clause. Further, Plaintiffs respectfully request that the *Motion* be converted to a Motion for Summary Judgment with discovery permitted.

Defendants specifically request that this Court dismiss Count I of the *Complaint* [ECF 1-2] under either Rule 12(b)(6) or 56. *Motion to Compel* [ECF 33] at p. 16. Requesting a dismissal of Count I of the *Complaint* [ECF 1-2] under these Rules is seeking a dismissal on the merits of Plaintiffs' claim for declaratory judgment. A dismissal for failure to state a claim is a dismissal on the merits. *Davis v. White*, 795 F.App'x 764 (11th Cir.2020) (citing, *N.A.A.C.P. v. Hunt*, 891 F.2d 1555, 1560 (11th Cir. 1990) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n.3, 101 S. Ct. 2424, 69 L. Ed. 2d 103 (1981)). Defendants consistently argued that all of the claims are subject to arbitration; yet, when they think they will benefit from seeking relief through judicial proceedings, they seek such relief. If the Arbitration Agreement is invalid, a number of Talent and

Wrestlers could (and probably would) pursue claims against AEW. As long as the legal fiction that arbitration is preferable to judicial proceedings persists, Plaintiffs, putative class members, and the many other individuals across this country who are subject to arbitration agreements will continue to be denied their 7th Amendment constitutional right to an access to courts as long as the legal fiction persists.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court **DENY** *Defendants' Motion to Compel Arbitration and Dismiss this Action*, [ECF 11], or, in the alternative grant leave to amend the *Complaint* or convert the *Motion to Compel* to a Motion for Summary Judgment with limited discovery.

Kevin Foote, et al.
By Counsel:

/s/Stephen P. New
Stephen New (pro hac vice)
Stephen New & Associates
430 Harper Park Drive
Beckley, WV 25801
Steve@newlawoffice.com
304-250-6017
*Lead Counsel for Plaintiff*

/s/Christopher Kellam
Christopher Kellam, Esq.
Florida Bar Number 59989
(Member of the Middle District of Florida)
Keller Swan, PLLC
759 Parkway Street, Suite 202
Jupiter, Florida 33477
(561)453-0626
ckellam@kellerswan.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this 10th day of February 2025, a true and accurate copy of the foregoing was electronically filed with the Court by using the CM/ECF system, and was served via electronic mail to the following counsel of record:

JACKSON LEWIS P.C. B.
Tyler White, FBN: 0038213
Tyler.White@jacksonlewis.com
James D. McGuire, FBN: 1032198
James.McGuire@jacksonlewis.com
501 Riverside Avenue, Suite 902
Jacksonville, FL 32202
Tele: 904-638-2655
Fax: 904-638-2656
*Counsel for Defendants*