UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

KEVIN FOOTE, et al.,

    Plaintiffs,

v.                            Case No. 3:24-cv-1206-HES-MCR

ALL ELITE
WRESTLING, LLC, et al.,

    Defendants.
_____/

## ORDER

This matter is before this Court on "Defendants' Motion to Compel Arbitration and Dismiss this Action" (Dkt. 33), and "Plaintiffs' Response in Opposition to Defendants' Motion to Compel Arbitration and Dismiss this Action" (Dkt. 46).

### I.

Plaintiffs filed this case in the Philadelphia Court of Common Pleas in August 2024. (Dkt. 1-2.) On October 4, 2024, Defendants removed this case to the District Court for the Eastern District of Pennsylvania ("EDPA"). (Dkt. 1.) One week later, the defendants moved to dismiss the case for improper venue or, in the alternative, to transfer venue or compel arbitration. (Dkt. 11.) On November 21, the district court in Pennsylvania granted the defendant's

motion to transfer venue. (Dkt. 22.) The next day, the case was transferred to the Middle District of Florida and assigned to the undersigned. (Dkt. 23.)

On January 2, 2025, Defendants moved to stay discovery until this Court determined whether to compel arbitration. (Dkt. 27.) Defendants did not file a motion to compel arbitration but instead asked this Court to "reactivate" the motion to compel filed in EDPA. (*Id.* at 2.) On January 3, 2025, this Court granted the motion to stay discovery pending this Court's ruling on compelling arbitration but denied the motion insofar as it asked this Court to revisit the motion to compel filed in EDPA. This Court directed Defendants to file a new motion to compel arbitration with this Court within seven days or the stay would be lifted. (Dkt. 28.)

Defendants now move to compel arbitration pursuant to the terms of the parties' independent contractor agreements ("Agreements") and dismiss the present action pursuant to Fed. R. Civ. P. 12(b)(1). (Dkt. 33.) In their Response, Plaintiffs argued that arbitration should not be compelled because the Agreements are unconscionable and unenforceable. (Dkt. 46.)

The parties do not dispute that a valid written agreement to arbitrate was executed and agreed to by the parties. (Dkt. 34-2 at 18, 22; 34-3 at 18, 22; 34-4 at 17, 21.) Plaintiff Kevin Foote signed and executed his Agreement with

2

AEW on July 10, 2023, and Plaintiffs Brandon and Brent Tate signed and executed their Agreements on August 23, 2023, and August 9, 2022, respectively. (*Id.*) Section 16.1 of the Agreements is identical in each and provides:

> [A]ll disputes between Talent and AEW, including, without limitation, any dispute relating to any matter arising under this Agreement or any dispute concerning the performance, application or interpretation of any provision of this Agreement (including, without limitation, the application of this Section 16 to any dispute), shall be resolved for final, binding, and conclusive arbitration conducted before a single arbitrator in Duval County, Florida and administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules and Procedures.

(Dkt. 34-1 at 18.)

## II.

The Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA") governs motions to enforce arbitration agreements. Because "arbitration is a matter of contract," *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010), "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U. S. 213, 221 (1985)). A party may move to enforce an arbitration agreement, and a court must stay proceedings and compel arbitration if the claims in question are arbitrable. 9 U.S.C. §§ 3, 4. A

claim is arbitrable if it falls within the scope of the parties' arbitration agreement.

Although the threshold question of "arbitrability" — whether the parties' dispute falls within the scope of the parties' arbitration agreement — would typically be decided by the courts, the parties can include a "delegation provision" in their arbitration agreement, essentially contracting that the arbitrator will decide the issue of arbitrability. *Rent-A-Center*, 561 U.S. at 69 (citing *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 83-85 (2002)). Faced with a delegation provision, the court must answer two questions: (1) "whether the parties clearly and unmistakably agreed to delegate questions of arbitrability to an arbitrator[;]" and (2) "whether [the party opposing arbitration] has specifically challenged the enforceability of the parties' delegation agreement." *Attix v. Carrington Mortg. Servs., LLC*, 35 F.4th 1284, 1296 (11th Cir. 2022). The Eleventh Circuit enforces parties' agreements to refer threshold questions of arbitrability to the arbitrator. *Given v. M&T Bank Corp. (In re Checking Acct. Overdraft Litig.)*, 674 F.3d 1252, 1255 (11th Cir. 2012).

If the parties agreed to delegate arbitrability questions and the opposing party has not specifically challenged the delegation provision, the court must end its inquiry and refer the matter to arbitration. *Attix*, 35 F.4th at 1302-04.

In other words, if the objecting party does not specifically challenge the *delegation provision* of the arbitration agreement — as opposed to the arbitration agreement as a whole — "the federal courts must treat the delegation provision 'as valid under [FAA] § 2, and [sic] must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator.'" *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146-47 (11th Cir. 2015) (quoting *Rent-A-Center*, 561 U.S. at 72).

### III.

This Court will stay proceedings and refer this matter to arbitration. Under the analysis in *Attix*, this Court's first inquiry is whether the parties "unmistakably agreed to delegate questions of arbitrability to an arbitrator." 35 F.4th at 1296. Here, the Agreements contain an express delegation clause and incorporate by reference the JAMS, Inc. Comprehensive Rules and Procedures. Section 16.1 of the Agreements provides "any dispute relating to any matter under this agreement . . . including, without limitation, the application of this Section 16 to any dispute . . . shall be resolved for final, binding, and conclusive arbitration." (Dkt. 34-2 at 18.) This is classic delegation language. Moreover, Section 16.1 provides that arbitration shall be "administered by JAMS, Inc. pursuant to its Comprehensive Arbitration Rules

and Procedures." (*Id.*) These Rules provide:

> (b) Jurisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator. The Arbitrator has the authority to determine jurisdiction and arbitrability issues as a preliminary matter.

JAMS, Inc., JAMS Comprehensive Arbitration Rules & Procedures, Rule 11(b) (2021), https://www.jamsadr.com/rules-comprehensive-arbitration/#Rule-11 (last visited June 4, 2025).

Incorporating the JAMS rules and procedures validly delegates arbitrability to the arbitrator. *Attix*, 35 F.4th at 1298 ("By incorporating this AAA rule about the arbitrator's 'power to rule on his or her own jurisdiction' into their agreement, [the parties] clearly and unmistakably agreed to arbitrate threshold arbitrability disputes."). By committing issues about "the application of . . . Section 16 to any dispute" to an arbitrator's review and incorporating the JAMS rules and procedures, "the provision clearly and unmistakably sends threshold arbitrability disputes to an arbitrator instead of a court." *Attix*, 35 F.4th at 1297; *see also JPay, Inc. v. Kobel*, 904 F.3d 923, 937 (11th Cir. 2018) (finding that "by incorporating AAA rules into an agreement parties clearly and unmistakably evince an intent to delegate questions of arbitrability.").

6

Next, this Court inquires "whether [the party opposing arbitration] has specifically challenged the enforceability of the parties' delegation agreement." *Attix*, 35 F.4th at 1302. Plaintiffs have not. "A party specifically challenges the validity or enforceability of a delegation agreement if, and only if, the substantive nature of the party's challenge meaningfully goes to the parties' precise agreement to delegate threshold arbitrability issues." *Id.* at 1304 (citing *Rent-A-Center*, 561 U.S. at 71-72). Reading Plaintiffs' Response in the most gracious light possible, this Court finds that Plaintiffs have not specifically challenged the delegation clause. (Dkt. 46 at 16.) Plaintiffs contend "the Arbitration provisions are unconscionable and unenforceable;" "these provisions would include the delegation clause;" and "the reasons supporting the unconscionability of the entire Agreement also support the unconscionability of the delegation provision." (*Id.*)

These generalized allegations are not sufficient to constitute a "specific challenge" to the delegation clause in Section 16 of the Agreement. "To directly or specifically challenge the validity or enforceability of a delegation agreement, it is not sufficient for a party to merely say the words, 'I am challenging the delegation agreement[;]' challenging a delegation agreement is a matter of substance, not form." *Attix*, 35 F.4th at 1304 (internal quotations

omitted). Plaintiffs' Response "only challenges the arbitration provision generally and therefore falls short of the *Rent-A-Center* pleading requirements." *Parnell*, 804 F.3d at 1148. Plaintiffs contend that "the reasons supporting the unconscionability of the entire Agreement also supports the unconscionability of the delegation provision," (Dkt. 46 at 16) but they do not offer any details about why the delegation provision specifically, apart from the Agreement as a whole, is unconscionable and thus unenforceable. *See Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1265 (11th Cir. 2017) (finding that the delegation clause was not directly challenged when "the heart of [plaintiff's] argumentation was directed at the agreement as a whole.").

Because Plaintiffs fail to "specifically challenge the parties' agreement *to commit to arbitration* the question of the enforceability of the arbitration agreement" *Parnell*, 804 F.3d at 1149 (emphasis in original), their challenges must be decided in arbitration. *Attix*, 35 F.4th at 1304 (citing *Parnell*, 804 F.3d at 1146-47). As such, this matter will be referred to arbitration, the arbitrator will determine the threshold issues of arbitrability, and this litigation will be stayed during the pendency of the arbitration proceedings.

Accordingly, it is **ORDERED**:

1. "Defendants' Motion to Compel Arbitration and Dismiss This Action" (Dkt. 33) is **GRANTED** to the extent that it seeks to compel arbitration and **DENIED** to the extent that it seeks to dismiss the action, and the Parties are compelled to arbitrate all Plaintiff's claims asserted in this lawsuit;

2. The Clerk is directed to **ADMINISTRATIVELY CLOSE** the file during the pendency of the arbitration proceedings and to terminate all pending motions; and

3. Plaintiff shall update this Court on the arbitration proceedings every ninety days.

**DONE AND ORDERED** in Jacksonville, Florida, this ___ day of June, 2025.

HARVEY E. SCHLESINGER
UNITED STATES DISTRICT JUDGE

Copies to:
Stephen P. New, Esq.
Christopher Wade Kellam, Esq.
B. Tyler White, Esq.
James D. McGuire, Esq.
Daniel Frederick Thornton, Esq.